BONALD L. GARBRECHT
LAW LIBRARY

SEP 7 2000

STATE OF MAINE
OXFORD, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-99-38
RE-99-44
RE-99-45

CoB — OxF — 9-1-2000

DEAN BENNETT, CHERYL MARTIN
and RICHARD BENNETT
     Plaintiffs

v.

LLOYD POLAND
     Defendant


RECEIVED AND FILED
SEP - 5 2000
Donna L. Howe
CLERK OF COURTS

JAMES CONROY and MARY PAT
CONROY, TRUSTEE UNDER THE
CHRISTOPHER J. HIGGINS INTER
VIVOS TRUST
     Plaintiffs

v.

DEAN BENNETT, CHERYL MARTIN,
and RICHARD BENNETT
     Defendants

ORDER ON
MOTION FOR SUMMARY
JUDGMENT

LLOYD POLAND, GINA POLAND, LEON
POLAND, LEILANI POLAND, and
NATASHA POLAND
     Plaintiffs

v.

DEAN BENNETT, RICHARD BENNETT
and CHERYL MARTIN

## BACKGROUND

Dean Bennett, Richard Bennett and Cheryl Martin (the Bennetts) are the fee

1

simple owners of an approximately 45 acre parcel of land in Greenwood, Oxford County. This parcel of land has been in the Bennett family for more than 100 years. At one time a county road traversed the property in a northwest to southeast direction. It is undisputed that this county road was fully discontinued as a public way in 1899.

In 1998 Lloyd Poland purchased a large parcel of land lying to the west and northwest of the Bennett tract. In 1999 Lloyd Poland conveyed portions of the land to James Conroy and Mary Pat Conroy, as Trustee of the Christopher Higgins Inter Vivos Trust (the Conroys) and other portions to Gina Poland, Natasha Poland, Leon Poland and Leilani Poland (Poland grantees).

Also in 1999, Lloyd Poland cleared, bulldozed, blasted, widened and spread gravel on the county road traversing the Bennett property. The Bennetts blocked access to the county road by constructing a large gate at one end of the road and by placing boulders at the other end. The Bennetts also constructed a rock wall between the two barricades.

The Bennetts allege that for the past 65 years or more, the Bennetts controlled the use of the road and would grant and deny permission to use the road and periodically posted no trespassing signs and physically blocked the road. Dean Bennett, in an affidavit, described the road as "a jeep path, ... a narrow, rutted, rock strewn lane suitable for passage by foot, horseback and four-wheel drive vehicles and by two-wheel drive vehicles depending on the season." At his deposition, Dean Bennett noted that he had seen snowmobiles, ATVs and horses use the road and

2

once he "managed to make it through" the road in a car.

Lloyd Poland, the Poland grantees and the Conroys (the "Polands") dispute that the Bennetts controlled the use of the county road and support this assertion with two affidavits purporting to demonstrate that the county road in question has been used by many members of the public for various purposes, including, but not limited to, hunting and recreational purposes. The affidavits also allege that the road is not overgrown and appears to be well-travelled.

Count I of the Bennetts' complaint alleges common law trespass. Count II alleges statutory trespass. Count III requests punitive damages and Count IV requests a preliminary injunction. Lloyd Poland, in his answer affirmatively alleged that he had a deeded right-of-way across a portion of the Bennetts' property and that an easement existed by necessity or prescription. The Poland grantees and the Conroys filed suit requesting a preliminary injunction enjoining the Bennetts from maintaining or creating an impediment to access the road. A motion requesting the consolidation of all three actions was granted.

## DISCUSSION

The Polands, in their Memorandum in Opposition to Motion for Summary Judgment address only the issues of whether a public and/or private easement was acquired by prescription. The party opposing a motion for summary judgment "is obligated to produce specific controverted facts exposing the existence of a genuine

3

issue." Houlton Band of Maliseet Indians v. Boyce, 1997 ME 4, ¶ 13, 688 A.2d 908, 911. M.R. Civ. Pro. 56(e). Therefore only these issues are properly before the court in this summary judgment motion. Easement by necessity and a deeded right-of way, raised as affirmative defenses by Lloyd Poland, are therefore abandoned.

As a preliminary matter, it should be noted that it is not disputed that the road in question was discontinued prior to 1976. In 1976, a new chapter of title 23 was enacted providing for the laying out and discontinuance of public ways within municipalities. Title 23 M.R.S.A. § 3026 gave the municipalities the power of discontinue "town ways" defined by 23 M.R.S.A. § 2021(3)(B) to include "[a]ll town ways not discontinued or abandoned before July 29, 1976." Section 3026 further provides that when the municipality discontinued a town way that "unless otherwise stated in the [discontinuance] order, a public easement shall . . . be retained." Therefore, the Legislature clearly provided that the only county ways within a municipality that would be affected were those "county ways not discontinued or abandoned before July 29, 1976." See Craig v. Davis 649 A.2d 1096, 1097 (1994).

At common law, upon the discontinuance or abandonment of a public road, the fee in the road reverted to the abutting owners and no public easement remained. See Martin v. Burnham, 631 A.2d 1239, 1241 (1993).

*Public Prescriptive Easement*

The Bennetts have argued that whether or not individual parties have standing to assert a public easement is unsettled under Maine law. However, the

4

doctrine that the public at large is capable of acquiring a non-possessory interest in land has long been accepted in Maine. See Town of Manchester v. Augusta Country Club, 477 A.2d 1124, 1128 (Me. 1984); see also Littlefield v. Hubbard 124 Me. 299 (1925).

The elements of public prescriptive easements have been stated to be identical to the elements of private prescriptive easements. In order to establish a public prescriptive easement or private prescriptive easement:

> The party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed.

Shadan v. Town of Skowhegan 1997 ME 187, ¶6, 700 A.2d at 247(applying above standard in the context of a claim of a public prescriptive easement). S.D.Warren Co. v. Vernon, 1997 ME 161, ¶5, 697 A.2d 1280, 1282 (applying above standard in the context of a private prescriptive easement).

In the present case, the nature and extent of the use of the old county road is in dispute. The Polands have produced evidence that the county road was used for various purposes including, *but not limited to*, recreational and hunting purposes.

In Longley v. Knapp, 1998 ME 142, 713 A.2d 939 (1998), the Law Court stated that the character and continuity of use required to create a prescriptive easement is a factual issue that, if in dispute, as in this case, should not be resolved by a summary judgment. See id. at ¶ 17.

Clearly, under Maine caselaw use of the road for recreational or hunting

5

purposes is considered permissive, thereby precluding a finding of adversity. <u>See</u> <u>e.g., Shadan v. Town of Skowhegan</u> 1997 ME 187, ¶ 7 700 A.2d 245; <u>Town of</u> <u>Manchester v. Augusta Country Club,</u> 477 A.2d 1124, 1130 (1984); <u>S.D. Warren v.</u> <u>Vernon,</u> 1997 ME 161, ¶ 17, 697 A.2d 1280. However, the Polands, by way of affidavit, have raised an issue of genuine material fact by alleging that use of the old county road was not limited to hunting and recreational purposes. Because a genuine issue of material fact exists regarding the nature and extent of the use, summary judgment is not appropriate.

*Private Prescriptive Easement*

As noted above, the elements of a private prescriptive easement are identical to the elements of a public prescriptive easement. However the concept of "tacking" applies in the context of a private prescriptive easement. The court addressed private prescriptive easements and the concept of "tacking" in <u>Blackmer v.</u> <u>Williams,</u> 437 A.2d 858 (Me. 1981). The Court stated that a prescriptive period is satisfied if successive periods of use are added or "tacked" together in order to satisfy the prescriptive period when privity exists between the users. <u>See id.</u> at 860.

The Bennetts, in support of their Motion for Summary Judgment have offered two letters, written in 1940, from Harithas (the Poland's predecessor in title) to Brooks (Harithas' predecessor in title). These letters show that Harithas, did not believe he had any claim of right to the county road in question.

The Polands have not countered this proposition. The Polands have held their land for less than two years. They must therefore show a material issue of fact

6

exists regarding adverse use for twenty years by tacking prior periods of use by Harithas. However, the Polands merely argue that Harithas' opinion regarding the existence of an easement is not binding on the court and speculate about the use of the road and Harithas' opinion regarding an easement since 1940. "Even though the party seeking summary judgment has the burden of establishing that no genuine issue of material fact exists, M.R. Civ. Pro. 56(e) imposes upon the responding party the obligation to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show either that a genuine issue of fact exists or that summary judgment may be appropriately entered against the moving party. The party opposing summary judgment is obligated to produce specific controverting facts exposing the existence of a genuine issue." Cloutier, Barrett, Cloutier & Conley v. Wax, 604 A.2d 42, 44 (Me. 1992)(citations omitted).

The Polands have not produced specific controverting facts exposing the existence of a genuine issue of fact regarding the actual use of the road by their predecessors in title sufficient to withstand summary judgment.

## CONCLUSION

For the foregoing reasons, the court grants summary judgment for the Bennetts on the issues of whether a private prescriptive easement or easement by necessity exists. The court also finds that a deeded right-of-way does not exist and grants summary judgment for the Bennetts. Summary judgment is denied on the issue of whether a public prescriptive easement exists.

Date: September 1, 2000

Carl O. Bradford
Active-Retired Justice
Superior Court

8