**In re James M. DINEEN.**

Supreme Judicial Court of Maine.

Dec. 13, 1977.

Doyle & Fuller by Jon R. Doyle (orally), Craig H. Nelson, Augusta, for plaintiff.

Wilk & Scott by Gordon H. S. Scott (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and POMEROY, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Acting pursuant to 4 M.R.S.A. § 851 (Supp. 1973), the Attorney General of Maine filed an information requesting that appropriate disciplinary measures be imposed on appellant, an attorney in York County, on the ground that he had "conducted himself in a manner unworthy of an attorney" within the meaning of that statute. The information, filed May 27, 1975, set forth eighteen counts of alleged professional misconduct. After due notice, a hearing was held before a justice of the Supreme Judicial Court, who determined that on six separate occasions, described in the information, appellant had acted in a manner unworthy of an attorney and ordered him to be suspended from the practice of law in all courts of this State for a period of four months. Mr. Dineen appeals

from that judgment, contending that the Justice erred in not dismissing all or certain parts of the information and that his findings, conclusions, and order of sanction were not supported by the evidence.

Appellant argues that all the charges against him should be dismissed because every count in the information refers to one or more disciplinary rules in the code of professional responsibility adopted by the Maine Bar Association as if those rules were authoritative. Since the association is a private organization and its rules of conduct have not been adopted by the Supreme Judicial Court as setting standards of conduct applicable in disciplinary proceedings, appellant contends that the information asks the Court to exceed its authority in enforcing the rules of a private organization.

■ Though it is true that the code of professional responsibility and the disciplinary rules do not have the force of positive law, the fact that the information relates the alleged instances of professional misconduct to specific rules does not render the information subject to dismissal. If particular conduct alleged in the information violates acceptable standards of behavior for an attorney apart from violation of some disciplinary rule, the allegation is sufficient with or without explicit reference to an appropriate rule. Besides standards readily derived from the criminal law and from the general law pertaining to fiduciaries, certain standards peculiarly applicable to attorneys are derived from traditions of the bar designed to assure fairness and efficiency of court procedures and adjudications and to foster public confidence in such fairness and efficiency. The "Attorney's Oath", required of all Maine attorneys, includes several provisions against which an attorney's actions may be properly measured.[1]

■ The provisions of the code of professional responsibility and the disciplinary rules are useful guidelines for the understanding of a lawyer's obligations. As the product of careful consideration by lawyers throughout the United States, they articulate in a helpful way many of the practices long recognized as the lawyer's common law obligations to his client and the court. Though not made positive law in Maine by statute or rule, they may be properly consulted by a justice of this Court as a source of guidance in disciplinary matters.

The presiding justice expressly based each finding of misconduct in this case on language contained in the Attorney's Oath, thereby in effect applying to appellant's conduct the standard appellant had sworn to uphold when he was admitted to practice. The justice did not err in resorting also to the code and disciplinary rules for some guidance in determining standards of conduct for an attorney. Appellant neither claims nor has demonstrated that he has been in any way misled or prejudiced by the references to the code in the information. The presiding justice was correct in denying the motion to dismiss the information.

■ It would serve no useful purpose to treat in detail the findings and conclusions of the presiding justice with respect to each of the allegations of the information. In his decision and order, he does not discuss certain charges he thought were either insufficiently proved or insufficient in legal effect to constitute conduct unworthy of an attorney. With respect to those charges on which the justice based his order suspending applicant, study of the record discloses sufficient evidence to support each finding of fact and the ultimate conclusion that appellant had conducted himself in his pro-

1. 4 M.R.S.A. § 806 (Supp. 1976–77):

"You solemnly swear that you will do no falsehood nor consent to the doing of any in court, and that if you know of an intention to commit any, you will give knowledge thereof to the justices of the court or some of them that it may be prevented; you will not wittingly or willingly promote or sue any false, groundless or unlawful suit nor give aid or consent to the same; that you will delay no man for lucre or malice, but will conduct yourself in the office of an attorney within the courts according to the best of your knowledge and discretion, and with all good fidelity, as well as to the courts, as to your clients. So help you God."

fession in a manner unworthy of an attorney. Suspension from the practice of law for four months is within the range of sanctions permitted the presiding justice by 4 M.R.S.A. § 853 (Supp. 1973). On the facts found, the presiding justice did not abuse his discretion in imposing that sanction.

Before the hearing, appellant moved to dismiss three counts of the information because a certain civil action, *Boyle v. Share*, Me., 377 A.2d 458 (1977), involving issues related to those raised in the three counts, was then on appeal to the Law Court. The presiding justice decided not to consider appellant's conduct as alleged in two of the three counts because he preferred not to anticipate the Law Court's determination of what might be critical issues of law. However, he refused to dismiss one of the three counts, count numbered "eleven," because he was satisfied that the answer to the legal issue involved was so plain that it would be pointless to await a decision by the Law Court. Appellant contends that the presiding justice erred in considering any conduct of appellant related to the *Boyle v. Share* litigation.

█ We think the justice committed no error or impropriety in taking up the eleventh count, hearing evidence relating to it, and drawing conclusions from that evidence. He was warranted in finding the facts as follows: On August 28, 1973, appellant, acting as attorney for one Boyle, had obtained a writ of attachment under which on September 1, 1973, he had placed a keeper in the store of defendant Share. Nearly a year later, purporting to act on the strength of the same writ of attachment, he had again placed a keeper in Share's store and seized cash from the cash register. When he acted the second time, a judgment for Boyle had been entered in the State District Court in the civil action incident to which the writ of attachment had been procured, and an appeal from that judgment was then pending. Though appellant seems to have known the general rule that an attachment may not be made more than thirty days from the date of the order approving the writ of attachment, he testified that he acted as he did because he had a good faith belief and "feeling" that his conduct was authorized by Rule 62(f) of the District Court Civil Rules. That rule provides, in part, by reference to Rule 62(f), M.R.Civ.P.: "An attachment . . . shall, unless dissolved by operation of law, continue . . . during the pendency of any appeal."

Contending that the true meaning of Rule 62(f), D.C.Civ.R. was an unresolved legal issue and that his actions might be authorized by a subsequent interpretation of Rule 62(f) by the Law Court, the appellant urged the presiding justice to dismiss count eleven or to reserve judgment on it. We concur in the justice's characterization of this "legal issue."

> "Not only the textual language of Rule 62(f) itself but also the Reporter's Notes to the Rule and the 'Field McKusick & Wroth' commentary upon it delineate in language clear beyond any possibility of reasonable doubt that the function of Rule 62(f) is only, and no more than, to continue the legal force of whatever attachments have already been made and are in existence. Rule 62(f) does not purport to authorize, after judgment and pending appeal, the making of any new attachments under the authority of a writ of attachment issued almost a year previously."

Having correctly determined that no meritorious issue of law was presented by count eleven, the single justice properly denied appellant's motion to dismiss it.

The findings and conclusions of the presiding justice are supported by the evidence. We find no error.

The justice's order of sanction directed that the period of suspension begin one month from the date of entry of the order or, if appeal were taken, immediately from the date of final determination of the appeal.

We modify the justice's order of sanction to provide that the period of suspension shall commence thirty days from the date of this mandate.

The entry is:

Appeal denied.

Judgment and Order of suspension modified so as to become effective thirty days from date of this mandate and as thus modified, affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

WERNICK, J., did not sit.